**Middlesex United Presbyterian Church
in the United States**
**v.**
**Middlesex Presbyterian Church**

*Lee C. McCandless,* for plaintiffs.
*Roger C. Wiegand,* for defendants.

BRYDON, *J.,* October 30, 1986 — Defendants have moved for summary judgment. This case

arises from a dispute over the ownership of the property of a church, formerly known as Middlesex United Presbyterian Church. The congregation of said church voted on April 6, 1981, to disaffiliate themselves from the United Presbyterian Church In The U.S.A. However, the vote was not unanimous and the minority felt that they should still control the church property. Subsequently, the denominational hierarchy and the minority filed suit to recover the church property. The present plaintiffs were named as plaintiffs along the Butler-Beaver Presbytery. The present defendants were named as defendants. The court will refer to the first suit as Middlesex I and to the instant suit as Middlesex II.

At the trial stage, the Honorable John C. Dillon decided in favor of defendants (majority) and awarded them the property. On appeal, the Commonwealth Court reversed. Subsequently, the Supreme Court reversed the Commonwealth Court and reinstated Judge Dillon's opinion. *The Presbytery of Beaver-Butler of the United Presbyterian Church In the U.S.A. et el. v. Middlesex Presbyterian Church et al.*, 507 Pa. 255, 489 A.2d 1317 (1985). On February 11, 1986, a complaint was filed to begin this action.

Defendants have moved for summary judgment on the basis of res judicata and collateral estoppel. The question presented is whether these doctrines apply. If they do, there is no question of material fact to be decided. Hence, the issue is whether the adjudication in Middlesex I is a bar to the present proceedings.

In *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa. Super. 225, 464 A.2d 1313 (1982), the Superior Court explained res judicata in the following

manner:

"[3] . . . final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same way or any other judicial tribunal of concurrent jurisdiction."

The Superior Court further held that there must be a concurrence of four conditions:

(1) identity of issues,

(2) identity of causes of action,

(3) identity of persons and parties to the action, and

(4) identity of the quality or capacity of the parties suing or sued.

The Superior Court also set forth the grounds needed for collateral estoppel to apply:

(1) the issue decided in the prior adjudication was identical with the one presented in the later action,

(2) there was a final judgment on the merits,

(3) the party against whom the plea was asserted was a party or in privity with a party to the prior adjudication,

(4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in the question in a prior action.

The basic difference between the two doctrines is that collateral estoppel may be asserted by a stranger to the first action. "Unlike res judicata, there is no requirement that there be an identity of parties between the two actions to invoke the bar." Id. p. 1319.

The court concludes that both of these doctrines apply to the present action. Therefore, these pro-

ceedings should be barred. A discussion follows:

First, it should be noted that a final judgment was entered on the merits in Middlesex I.

Second, the issue raised in Middlesex I is the same as in Middlesex II.

In Middlesex I the Supreme Court stated the issue as follows:

"The issue presented is whether the members of a local church which has been affiliated with a national denomination can retain ownership of the assets and property of that local church after having terminated their membership in that denomination." *Presbytery of Beaver-Butler et al.,* supra, at 1318.

Plaintiffs argue that the Supreme Court merely decided that the denomination itself did not have ownership of the church property and as a result that no express trust existed. The above statement of the issue by the Supreme Court clearly refutes this contention. The Supreme Court, by including the phrase "members of the local church," plainly stated that it meant to decide which members of the church had ownership of the assets. And, by reinstating Judge Dillon's final decree, it decided that the present defendants were in fact the owners.

The issue in Middlesex II is the same. Plaintiffs' own statement of the issue shows this. On page 11 of his brief he states the issue as being:

"[W]hether those faithful to the trust under which the property was acquired [the minority] are entitled to the property in preference to those dissenting [the majority] who left and joined another denomination."

Again, plaintiffs' are asking whether their group of church members (the minority) are the owners of the property or whether the other group (the majority) who voted to leave the denomination are the

owners. This issue was fully and fairly litigated in Middlesex I and should now be barred from being litigated again.

Second, the causes of action must be the same. Plaintiffs claim they are not since Middlesex I was based on the theory of implied trust. However, a cause of action is not synonymous with a theory of recovery. A cause of action has generally been defined as the unlawful violation of a right which the facts show. *Catanese v. Taormina,* 437 Pa. 519, 263 A.2d 372 (1970); *Framlau Corp. v. County of Delaware,* 233 Pa. Super. 272, 299 A.2d 335 (1972).

In the present action the facts are the same as in Middlesex I. The claimed violation of plaintiff's rights is also the same. The only difference is that plaintiffs now seek to re-argue the issue decided in Middlesex I by arguing in a different manner. They also claim newly discovered property (stock) ownership of which has not been adjudicated. These supposed differences do not distinguish Middlesex II from Middlesex I.

The doctrine of res judicata bars not only issues actually raised, but also those issues that could have been litigated in the first action. *Day,* supra, at 1318. Therefore, any arguments plaintiffs wished to make regarding the ownership of the church property should have been made in Middlesex I. If they were not, they are now barred.

Concerning the newly discovered stock, that matter was also litigated in the first action. In plaintiff's complaint in Middlesex I in the prayer for relief, they specifically request that any securities be accounted for. Furthermore, paragraph 28 of said complaint alleges that the subject matter of the action includes personal property "unknown to the plaintiffs" and "other personal and real property the description of which is not at this time known to any

of the plaintiffs." These statements plainly refer to the newly found stock. Clearly, the ownership of this stock has already been adjudicated in Middlesex I and is not a basis for a new cause of action. Hence, the causes of action are identical.

Third, the identity of persons and parties must be the same. The only difference between the parties involved in Middlesex I and the present action is that Butler-Beaver Presbytery and its administrative commission are no longer plaintiffs. The present plaintiffs and defendants held the same positions in Middlesex I, therefore, the court concludes the parties are the same.

Plaintiffs' arguments that no judgment was rendered against the present plaintiffs is refuted by a reading of the captions of Judge Dillon's order and the Supreme Court opinion (filed with defendants' answer) which for brevity's sake abbreviates the other parties' names to "et al," but includes all those listed on plaintiffs' complaint nonetheless. Since all parties are mentioned, the judgment was meant to include all the parties.

Even if the parties are not the same, collateral estoppel would apply to bar plaintiffs' action. Collateral estoppel may be used as long as the party against whom the defense is invoked is the same. *Day*, supra, at 1319. Despite the adding of the trustees, ad litem in Middlesex II, the real parties in action are still the same as in Middlesex I. Therefore, collateral estoppel can be invoked to bar the present plaintiffs.

Fourth, the qualities or capacities of the parties suing or being sued must be the same. In the present action, the former plaintiffs of Middlesex I have now entered the names of two trustees ad litem. Such an addition, however, is only a change in form and not substance. The real parties in inter-

est are still the same, and their capacity has not been changed by the addition of the trustees ad litem. If it were, such an act could be used to defeat res judicata in almost any situation. Hence, the capacity of the parties is the same.

In summary, all four of the requirements for res judicata and collateral estoppel have been met. Since these doctrines are applicable, all issues have already been decided in Middlesex I and are barred from being relitigated. One last note is needed, however. Plaintiffs argue that under Pa.R.C.P. 1035(a) defendants' motion is untimely, having been filed the day after the court set the hearing date. Of course, the setting of a hearing date is an arbitrary matter based on the court's schedule. Furthermore, the hearing on the summary judgment motion originally scheduled for September 3, 1986, was continued until October 1, 1986, by the court's own motion. Moreover, by its very language 1035(a) is not meant to be strictly construed since it does not set any specific time for a summary judgment motion to be ruled untimely. Given these circumstances, the court holds the motion was timely.

In conclusion, there being no issue of material fact, defendant's motion for summary judgment is granted.

In accordance with the foregoing, we enter the following

## ORDER

And now, this October 30, 1986, after hearing and in conformance with the foregoing memorandum opinion, it is ordered that defendants' motion for summary judgment be, and hereby is granted.